**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MANUEL BARRERA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>               Plaintiff,<br><br>     v.<br><br>FORLINI'S RESTAURANT, INC., JOSEPH FORLINI, and DEREK FORLINI,<br><br>               Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, MANUEL BARRERA (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against FORLINI'S RESTAURANT, INC. ("Corporate Defendant"), JOSEPH FORLINI, and DEREK FORLINI ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage due to invalid tip credit; (2) unpaid wages, including unpaid overtime wages, due to misclassification of non-exempt workers as exempt; (3) unpaid tip compensation due to an invalid tip pooling policy; (4) unlawfully retained gratuities; (5) improper meal credit deductions; (6) statutory penalties; (7) liquidated damages; and (8) attorney's fees and costs.

2. Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wage due to invalid tip credit; (2) unpaid wages, including unpaid overtime wages, due to misclassification of non-exempt workers as exempt; (3) unpaid tip compensation due to an invalid tip pooling policy; (4) unlawfully retained gratuities; (5) improper meal credit deductions; (6) unpaid spread of hours premium; (7) statutory penalties; (8) liquidated damages; and (9) attorney's fees and costs.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

5. Plaintiff, MANUEL BARRERA, is a resident of Queens County, New York.

6. Defendants collectively own and operate Forlini's Restaurant, Inc. which is a restaurant (the "Restaurant"), located at 93 Baxter St, New York, New York 10013.

7.     Corporate Defendant FORLINI'S RESTAURANT, INC., is a domestic business corporation organized under the laws of New York, with an address for service of process and a principal place of business located at Forlini's Restaurant, Inc., 93 Baxter Street, New York, New York 10013.

8.     Individual Defendant JOSEPH FORLINI is a co-owner and executive officer of Corporate Defendant. JOSEPH FORLINI exercises operational control as it relates to all employees including Plaintiff. JOSEPH FORLINI frequently visits the Restaurant. JOSEPH FORLINI exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of the Restaurant could complain to JOSEPH FORLINI directly regarding any of the terms of their employment, and JOSEPH FORLINI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. JOSEPH FORLINI exercised functional control over the business and financial operations of Corporate Defendants. JOSEPH FORLINI had the power and authority to supervise and control supervisors of Plaintiff, and could reprimand employees.

9.     Individual Defendant DEREK FORLINI is a co-owner of Corporate Defendant. DEREK FORLINI exercises operational control as it relates to all employees including Plaintiff. DEREK FORLINI frequently visits the Restaurant. DEREK FORLINI exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of the

Restaurant could complain to DEREK FORLINI directly regarding any of the terms of their employment, and DEREK FORLINI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. DEREK FORLINI exercised functional control over the business and financial operations of Corporate Defendants. DEREK FORLINI had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class members, and could reprimand employees.

10. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

11. At all relevant times, the work performed by Plaintiff FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

12. At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL § § 2 and 651.

13. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL § § 2 and 651.

14. At all relevant times, Defendants employed at least eleven (11) employees as defined under NYLL.

15. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

16. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former tipped employees (including waiters, delivery persons, bartenders, servers, runners, and bussers, among others) employed by

4

Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

17. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including tips. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid wages due to invalid tip credit; (ii) unpaid wages, including unpaid overtime wages, due to misclassification of non-exempt worker as exempt; (iii) unpaid tip compensation due to an invalid tip pooling policy; (iv) unlawfully retained gratuities; (v) improper meal credit deductions; (vi) liquidated damages; and (vii) attorney's fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

19. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former tipped employees (including waiters, delivery persons, bartenders, servers, runners, and bussers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as

defined herein (the "Class Period").

20. All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of the Tipped Subclass.

22. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to pay minimum wage due to invalid tip credit; (ii) unpaid wages, including unpaid overtime wages, due to misclassification of non-exempt workers as exempt; (iii) failing to pay tip compensation due to an invalid tip pooling policy; (iv) failing to pay tip compensation due to unlawfully retained gratuities; (v) improper meal credit deductions; (vi) unpaid spread of hours premium; (vii) failing to provide proper wage statements per requirements of NYLL; (viii) failing to provide proper tip notices to tipped class members; and (ix) failing to

properly provide wage notices to Class members, at the date of hiring and annually, per requirements of NYLL.

23. Defendants failed to pay the proper minimum wage as they were not entitled to claim any tip credit because they failed to meet statutory requirements under NYLL. Plaintiff and the Class members similarly suffered from Defendants' failure to pay the proper minimum wage due to Defendants' invalid tip credit allowance, because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent (20%) of the total hours worked during a given shift each workweek; (iii) implemented an invalid tip pooling scheme; (iv) illegally retained tips; (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period; and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

24. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

25. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

26. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27. Defendants and other employers throughout the state violate New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendants employed Plaintiff and the Class within the meaning of New York law and applicable state laws;

   b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class members properly;

   c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class members for their work;

   d. Whether Defendants properly notified Plaintiff and Class members of their hourly rates;

   e. Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

   f. Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under NYLL and applicable state laws;

   g. Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

   h. Whether Defendants accurately tracked the amounts of tips earned each day and maintained records thereof;

   i. Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% or two hours of their work shift;

    j. Whether Defendants provided proper wage statements informing: (i) tipped employees of the amount of tip credit allowance for each payment period; and (ii) all non-exempt employees of information required to be provided on wage statements as required under NYLL and applicable state laws;

    k. Whether Defendants compensated Plaintiff and Class members on an illegal fixed salary basis;

    l. Whether Defendants improperly deducted meal credits from the wages of Plaintiff and Class members;

    m. Whether Defendants paid Plaintiff and Class members spread of hours premiums, as required under NYLL;

    n. Whether Defendants illegally retained gratuities of Plaintiff and Class members; and

    o. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL and applicable state laws.

## STATEMENT OF FACTS

29. On or about June 2001, Plaintiff MANUEL BARRERA was hired by Defendants to work as a waiter for Defendants' Forlini's Restaurant, located at 93 Baxter Street, New York, NY 10013. Plaintiff was employed by Defendants until August 2021 when he was fired by the owners of the Restaurant, who were also his supervisors, Derek Forlini and Joe Forlini.

30. During the entire time of Plaintiff BARRERRA's employment, he was paid weekly on a fixed salary basis. Plaintiff was compensated $180, plus tips, regardless of how many hours he worked in a workweek. From his discussions with co-workers, Plaintiff learned that many other

employees of Defendants were also compensated on a fixed salary basis regardless of the number of hours they worked in a workweek. Class members were similarly paid on a fixed salary basis.

31. During his employment, Plaintiff was scheduled to work as follows: Mondays, from 11:00 a.m. to 10:00 p.m.; Wednesdays and Thursdays, from 11:00 a.m. to 11:00 p.m.; Fridays, from 11 a.m. to 12 a.m.; Saturdays, from 4 p.m. to 1 a.m.; and Sundays, from 3 p.m. to 9 p.m.; for a total of sixty-three (63) hours per week.

3. Additionally, although Plaintiff was supposed to be off on Tuesdays, at least twice per month, Defendants required him to work on Tuesdays, for events/parties, or simply because the Restaurant was busy. On those days, Plaintiff worked from 4:00 p.m. to 11:00 p.m. During Plaintiff's employment with Defendants, Class members were similarly required to perform work for Defendants on their days off, depending on Defendants' staffing needs.

32. During his employment, Plaintiff worked four (4) days per week for more than ten (10) hours. At all times, Defendants did not pay Plaintiff his statutory spread of hours premium pursuant to NYLL. Similarly, Class members who worked shifts longer than ten (10) hours in duration were not paid spread of hours premiums.

33. Although in the beginning of his employment with Defendants, Plaintiff regularly clocked in and out for all of his hours, toward the latter part of Plaintiff's employment, Defendants did not require Plaintiff to clock in or out. Nevertheless, on rare occasions, Defendants randomly required Plaintiff to clock in and out for his hours.

34. From the start of his employment until his termination, for all shifts worked in a week, Plaintiff was compensated $180 per week plus tips for that week, regardless of the total number of hours he worked that week. Plaintiff was compensated on a weekly basis. Class members were similarly compensated on a fixed salary basis by Defendants which included a base

11

rate for all shifts worked during the week plus tips. There was never an agreement by Plaintiff or Class members that this fixed salary scheme would cover overtime hours.

35. Although Plaintiff received part of his compensation in tips, there was no tip sheet to verify that he received the correct amount in tips. The distribution of the tips was under the complete control of Defendants.

36. Throughout the duration of Plaintiff's employment, on a regular basis, Defendants who were the Restaurant owners and Plaintiff's supervisors would withhold credit card tips. Plaintiff was made aware of this out of suspicion that Defendants were illegally retaining a portion of the tips earned by tipped employees. Plaintiff therefore would ask co-workers how much they made in credit card tips, and compare the total amount of tips distributed to employees to the credit card tip report. When Plaintiff made this comparison, the amounts were invariably different. Yet, when Plaintiff complained to the owners, who were his direct supervisors, they would apologize and blame it on "computer error."

37. Additionally, although Defendants implemented a tip compensation scheme, at no time was Plaintiff provided with a tip credit notice or notice of Defendants' tip pooling policy. As a result, Plaintiff suffered unpaid minimum wages and unpaid overtime compensation due to Defendants' illegal tip compensation scheme. Class members similarly were not provided notice of Defendants' tip pooling policy.

38. Throughout his employment, Plaintiff and the Tipped Subclass members were paid below the minimum wage at an invalid "tip credit" minimum wage.

39. Defendants were not entitled to claim any tip credit allowance under FLSA or NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter in violation of FLSA and NYLL; (ii) failed to inform them that the tip credit claimed by

Defendants cannot exceed the amount of tips actually received by them; (iii) failed to inform Plaintiff that all tips received by Plaintiff are to be retained by him except pursuant to a valid tip pooling arrangement, in violation of FLSA; (iv) failed to inform Plaintiff that tip credit will not apply, unless Plaintiff has been informed of the foregoing tip credit notice requirement;, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each shift, in violation of FLSA and NYLL; (vi) failed to accurately track daily tips earned or maintain records thereof; and (vii) failed to provide a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of NYLL.

40. Plaintiff and Class members was required to engage more than 20% of their working time performing non-tipped related activities, such as washing dishes, sweeping and mopping the Restaurant, putting away wine bottles, accepting and unloading incoming deliveries and storing them in the Restaurant's basement, maintaining the outdoor dining area, which involved removing and organizing all tables and furniture in the outdoor area. Even though Defendants required Plaintiff and tipped employees to engage in non-tipped activities in excess of two hours or 20% of the total hours worked each shift, Defendants improperly claimed tip credit for all hours worked by tipped employees.

41. Throughout Plaintiff's employment, Defendants automatically deducted twenty-five ($25) dollars daily from Plaintiff's cash wages as a meal credit. This deduction was improper because Plaintiff had no lunch break and rarely had time to eat the meals for which Defendants were automatically charging him daily. Similarly, Class members suffered daily from Defendants' automatic meal credit deductions from their wages, but were not provide with a break during which to eat these meals, and therefore did not receive the benefit of this deduction.

42. During his employment, Plaintiff never received a notice regarding Defendants' tip pooling practices. Similarly, Class members did not receive notice regarding Defendants' tip pooling practices.

43. At no time during the relevant periods did Defendants provide Plaintiff with proper wage statements as required by NYLL. Similarly, Class members were not provided with proper wage statements.

44. At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper wages notices, at the beginning of employment and annually thereafter as required by NYLL.

45. At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper tip notices as required by NYLL.

46. Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiff or Class members, in violation of NYLL.

47. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of NYLL.

48. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF FAIR LABOR STANDARDS ACT

49. Plaintiff realleges and reavers Paragraphs 1 through 48 of this Complaint as fully set forth herein.

50. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

51. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

52. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

53. At all relevant times, Defendants had a policy and practice that failed to pay wages due to invalid tip credit to Plaintiff FLSA Collective Plaintiffs.

54. At all relevant times, Defendants had a policy and practice of unlawfully retaining the gratuities of Plaintiff and FLSA Collective Plaintiffs.

55. At all relevant times, Defendants had a policy of improperly compensating Plaintiff and FLSA Collective Plaintiffs on a fixed salary basis.

56. At all relevant times, Defendants had a policy of improperly automatically deducting meal credits from the daily wages of Plaintiff and FLSA Collective Plaintiffs.

57. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper

wages, when Defendants knew or should have known such was due.

59. Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

60. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

61. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to invalid tip credit, tip retentions, compensation on a fixed salary basis, and deductions, plus an equal amount as liquidated damages.

62. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF NEW YORK LABOR LAW

63. Plaintiff realleges Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

65. At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class members NYC minimum wage due to invalid tip credit.

66. Defendants willfully violated the rights of Plaintiff and Class members by retaining gratuities, in direct violation of NYLL.

67. Defendants failed to properly notify employees of their tips and tip pooling policies, in direct violation of NYLL.

68. Defendants knowingly and willfully failed to pay Plaintiff and Class members their spread of hours premiums for shifts lasting longer than ten (10) hours in duration, in violation of NYLL.

69. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper wage notice, at date of hiring and annually thereafter, as required under NYLL.

70. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under NYLL.

71. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members proper tip notices, at date of hiring and annually thereafter, as required under NYLL.

72. Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages due to tip credit, tip compensation due to invalid tip pooling, unlawful retained gratuities, unpaid compensation due to compensation on a fixed salary basis, improper daily meal credit deductions, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due to invalid tip credit deductions under NYLL;

d. An award of invalidly retained gratuities under NYLL;

e. An award of unpaid spread of hours premium under NYLL;

f. An award of unpaid wages due to improper fixed salary compensation;

g. An award of unpaid compensation due to improper meal credit deductions;

h. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to FLSA;

i. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to NYLL;

j. An award of statutory penalties, prejudgment, and post judgment interest, costs, and expenses of this action together with reasonable attorney's fees and expert fees and statutory penalties;

k. Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class; and

n. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: February 15, 2022  
      New York, New York

Respectfully submitted,  
By: /s/ *CK Lee*  
C.K. Lee, Esq.  
**LEE LITIGATION GROUP, PLLC**  
C.K. Lee (CL 4086)  
Anne Seelig (AS 3976)  
148 W. 24th Street, 8th Floor  
New York, NY 10011  
Tel.: 212-465-1180  
Fax: 212-465-1181  
*Attorneys for Plaintiff,*  
*FLSA Collective Plaintiffs,*  
*and the Class*